**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| In re:<br>I80 Equipment, LLC<br><br>      Debtor(s). | Case No. 17-81749<br><br>Chapter 7 |
| Jeana K. Reinbold, solely as Chapter 7<br>Trustee of the Estate of I80 Equipment,<br>LLC<br><br>      Plaintiff,<br><br>v.<br><br>Menard, Inc.<br><br>      Defendant | AP. No.  19-8110 |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S AMENDED MOTION TO
DISMISS**

Plaintiff Jeana K. Reinbold, solely as Chapter 7 Trustee of the Estate of

I80 Equipment, LLC ("Plaintiff") for her Response to the Amended Motion to

Dismiss pursuant to Fed. R. Bankr. P. 7012(b)(6) filed by Defendant Menard,

Inc. ("Menard") on May 15, 2020 (Doc. 20) ("Amended Motion") and to the

Memorandum in Support of the Amended Motion filed by Menard on May 15,

2020 (Doc. 21) ("Amended Memorandum"), states as follows:

**I.  BACKGROUND**

On March 4, 2020, Menard filed its initial Motion to Dismiss (Doc. 11)

("Motion") and Memorandum in Support thereof (Doc. 12). Plaintiff filed her

Response on April 14, 2020 (Doc. 16) ("Response"). On April 30, 2020 Menard

1

filed a motion to withdraw the Motion and for leave to file an Amended Motion
(Doc. 17). On May 1, 2020, this Court entered an Order granting Menard leave
to withdraw the Motion and to file an Amended Motion (Doc. 18).[1]

The Amended Motion asserts that the Complaint should be dismissed
under Bankruptcy Rule 7012(b)(6) because, given it paid for the goods, the
Debtor as a matter of law is deemed to have acquired title to and to have taken
delivery of the goods under Article 2 of the Illinois UCC (810 ILCS 5/2-101 *et.
seq.*) ("UCC") and the Illinois Retailers' Occupation Tax Act (35 ILCS 120/1 *et.
seq.*)("ROTA").[2]

As the Court has noted, there is no presumption that the Debtor took
delivery of the goods. *Reinbold v. Walmart Inc. et al.,* Case 19-8122 ("*Walmart*"),
Doc. 21, p.4. Further, that the Debtor paid for the goods does not
automatically mean it acquired title to or received any value from them. As the
Complaint alleges that the Debtor received no value from the goods, the
Amended Motion should be denied.

---

[1] Although granted leave to do so, the Amended Motion did not withdraw the Motion; therefore, Plaintiff maintains all of her arguments set forth in her Response. All definitions in Plaintiff's Response apply to this Response.
[2] Although the Amended Memorandum states that the situs of the transactions in issue were both Illinois and Iowa (p. 6), both it and the Motion subsequently cite only to provisions of the Illinois UCC. However, it appears the relevant sections in both the Illinois and Iowa UCC are substantially identical.

## II. ARGUMENT

### 1. The Complaint sufficiently alleges that the Debtor received no value in exchange for the transfers in issue.

Menard argues, as did the defendants in *Walmart,* that the party who pays for the goods in a retail store transaction is deemed as a matter of law to have taken delivery of the goods. Like such defendants, Menard cites no authority for this proposition. For the same reasons set forth in *Walmart,* this Court should reject this argument. As this Court noted:

> The Complaint alleges that the goods were purchased for the benefit of third parties, Jones and/or the Jones Companies, so that the Debtor received no value . . .   It is readily apparent that the issue of whether the Debtor 'received' the goods, and a value reasonably equivalent to what it paid, is a question of fact. .

*Walmart*, Case 19-8122, Doc. 21, p. 4.

Menard also argues that, because it paid for the goods, the Debtor must be deemed as a matter of law to have acquired title to the goods. This argument is similar to the argument advanced in *Walmart* and should be similarly rejected.

Menard cites the following UCC Sections:

Section 2-103(a), which defines a "buyer" as a person who buys or contracts to buy goods;

Section 2-106, which defines a "sale" as the passing of title from the seller to the buyer for a price;

Section 2-401(1), which provides in part that, unless otherwise explicitly agreed, the buyer acquires a special property in the goods upon their identification, and that title passes to the buyer in any manner explicitly agreed to;

3

Section 2-401(2), which provides in part that unless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes physical delivery of the goods; and

Section 2-503(1), which provides in part that tender of delivery requires that the seller put and hold conforming goods at the buyer's disposition.

However, nowhere do these Sections state that the party who pays for the goods is deemed to have acquired title to, or to have become the "owner" or "buyer" of, the goods. Many cases have held otherwise. In *Kirby v. NMC/Continue Care*, 993 P.2d 951 (Wy. 1999), the plaintiff contracted to purchase a custom wheelchair from the defendant. Medicaid submitted partial payment. The plaintiff claimed the chair was too heavy and wide, rejected it and sued for damages. The court held that, as the plaintiff contracted to buy the wheelchair, she was the buyer under UCC Section 2-103(a)(i) and could sue for breach of contract; the court held it to be inconsequential under the UCC's definition of buyer that the payment came from Medicaid.

In *Banco Del Estado v. Navistar Intern. Transp. Corp.*, 954 F. Supp. 1275 (N.D. Ill. 1997), a bank who signed a purchase contract for 80 buses as financer of the transaction and who ultimately paid the entire purchase price was held to not be a "buyer" under UCC Section 2-103(a) *Id.* at 1285. In *In re Sherwood Diversified Services, Inc.*, 382 F.Supp. 1359 (S.D.N.Y. 1974), the debtor financed the purchase of machinery and equipment. Equipment was ordered by and shipped directly to the purchaser. Upon delivery, the debtor remitted the full purchase price and entered into a "lease" with the purchaser. The court held the debtor was a financing agency under Section 2-104(2) of the

4

UCC, would not be considered a buyer or seller of the equipment and was not
required to collect sales taxes.

Menard also cites *In re Cohen*, 199 B.R. 709 (9th Cir. BAP 1996). In this
case, the debtor created a Ponzi scheme in which he offered to purchase luxury
cars for participants at a wholesale price ($80,000), rather than the retail price
($114,500). After obtaining $80,000 from several participants, the debtor went
to a dealer and entered into contracts to purchase as many luxury vehicles as
his funds allowed, paying the dealer $114,500 per vehicle. The debtor would
then instruct the dealer to deliver the vehicles directly to a designated
participant.  The trustee sued the dealers, arguing that they received
fraudulent transfers equal to the amount paid by the debtor ($114,500) per
vehicle minus the amount paid to him by the Ponzi participant ($80,000) per
vehicle. Citing UCC Section 2-401, the court granted summary judgment to the
dealers. Although the court held the $114,500 payments were actually
fraudulent, it found the dealers qualified for the safe harbor under Bankruptcy
Code Section 548(c) because (a) they were in good faith; and (b) the debtor
received full value for his purchases because he had the right to designate to
whom the vehicles would be delivered. This gave him "dominion" and "control"
over the vehicles. *Cohen,* 199 B.R. at 715 (citing *Bonded Fin. Servs., Inc. v,
European American Bank,* 838 F.2d 890, 893-894 (7th Cir. 1988)).

However, *Cohen* was distinguished in *In re Cambridge Capital Group,
Inc.*, 2009 WL 3823185 (Bankr. D.C. 2009). In this case, the wife of the

5

corporate debtor's principal executed a purchase order for a vehicle with the

defendant, Kar Smart, Inc. The debtor paid the $33,200 purchase price to Kar

Smart, who transferred title to and possession of the vehicle to the wife, who

took delivery of the vehicle. The trustee sued Kar Smart to recover the payment

under Code Section 548(a)(1)(B). Kar Smart cited *Cohen*, contending that the

corporate debtor acquired a brief property interest in the vehicle that

constituted value under Section 548. The court distinguished *Cohen* on the

ground that the debtor there was a party to the sales contracts with the

dealers. The contracts gave the debtor the right to direct the disposition and

delivery of the cars, which constituted value under Section 548. In *Cambridge*,

the wife was the party to the contract, not the debtor, and thus the debtor had

no right to direct disposition or delivery of the vehicle. The court found the

trustee had established no reasonably equivalent value, noting:

> The mere payment of money by the debtor for the benefit of a third
> party without a supporting contract giving the debtor some rights
> in the property (e.g., to direct its ultimate disposition or delivery) is
> insufficient, as a matter of law, to establish value for the purposes
> of § 548.

*Cambridge,* 2009 WL 3823185 at *7.

The Complaint alleges that the Fraudulent Transfers (a) were on account

of indebtedness owed by Jones, Jones Lease, and/or JP Rentals, not the

Debtor (¶17); (b) were wholly for the benefit of Jones and his other entities, not

the Debtor (¶ 21(b)); and (c) were made to or for the benefit of Jones' other

entities and had as their only purpose to further said entities' real estate

6

business (¶ 21(f)). It further alleges that the properties into which materials purchased from Menard were incorporated were owned by Jones Lease and JP Rentals which Jones controlled (¶ 21(d)).

In ruling on a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations of the complaint as true. *In re Grube,* 500 B.R. 764, 770 (Bankr. C.D. Ill. 2013). Courts are required to view the facts in the light most favorable to the plaintiff and to draw all reasonable inferences that support the plaintiff's theory. *Walmart,* Case 19-8122, Doc. 21, pp. 3-4.

Plaintiff's Complaint has alleged that any benefit provided by Menard in exchange for the Debtor's payments went wholly to Jones or his entities, and that none went to the Debtor. The reasonable inference to be drawn from these allegations is that not only did the Debtor not take delivery of any goods, but it also had no ability under any contract or otherwise to direct the delivery or disposition thereof. This means that, in exchange for making the payments, the Complaint inferentially alleges the Debtor did not receive or obtain (a) title to the goods or any of the rights of a "buyer" under any UCC Section, including Section 2-503(1); (b) "dominion" or "control" over the goods; and (c) any "value" for purposes of Bankruptcy Code Sections 548(a)(1)(A), 548(a)(1)(B) or 548(c).

Menard also cites *In re Think Retail Solutions, LLC,* 2019 WL 2912717 (Bankr. N.D.Ga. 2019), a non-UCC case. In this case, the debtors, a corporation and its sole owner, paid for airline tickets which the defendant airline (Delta) issued to passengers designated by the debtors. The passengers

7

were the owner, her friends and her family. No tickets were issued to the

corporate debtor, as FAA regulations require tickets to be issued only in the

name of the natural person who completes the air travel. The trustee of each

debtor sued Delta under 548 for actual and constructive fraud, arguing that

the debtors received no value because the tickets were used to go on gambling

trips. The court, citing *Cohen*, held the debtors did receive value because (a) the

debtors had the power to designate the passenger for each ticket; and (b) the

owner could have conducted business at the destinations, and therefore both

debtors received potential economic benefit at the time of purchase. The court

granted summary judgment to Delta on all counts.

This case does not aid Menard for the same reasons as *Cohen*. The

Complaint alleges the Debtor received no benefit from the payments,

reasonably inferring that the Debtor had no ability to direct or designate

delivery of the goods and received no potential economic benefit from them.

Menard cites *In re Henning*, 69 B.R. 348 (Bankr.N.D.Ill. 1987), which

involved a priority dispute between two creditors. Based on a joint stipulation

of facts, the court denied priority to a purported purchase money secured

creditor because he did not perfect his security interest within twenty (20) days

of the date of delivery of certain cattle to the debtor. There was no dispute in

this case as to when the cattle were delivered or that title transferred to the

debtor upon delivery. As the allegations of the Complaint reasonably infer that

8

the Debtor did not acquire title to the goods and was not the buyer, and as this proceeding is only at the motion to dismiss stage, *Henning* is irrelevant.

Menard next cites language from *Cohen* indicating that retail merchants routinely sell goods to one individual and deliver them to another; as long as a merchant is in good faith and has no reason to suspect any skullduggery, "logic and equity" require that he not become a "captive risk taker." Ordinary market-price sales must thus be viewed as transactions between the merchant and the "customer" and are therefore not avoidable. *Cohen*, 199 B.R. at 715.

First, the Complaint inferentially alleges the Debtor was not the "customer."[3] Second, the equitable arguments stated above are only relevant under Section 548(c) to the extent Menard gave value to the debtor in exchange for the payments. *In Re Bennett Funding Group, Inc.*, 232 B.R. 565, 572-73 (Bankr.N.D.N.Y. 1999); *Cohen,* 199 B.R. at 719-720. The Complaint alleges Menard gave no such value. And, as noted in Plaintiff's Response, the good faith of an initial transferee is irrelevant under Section 550(a)(1) and initial transferees do bear the burden of inquiry and the risk of a fraudulent conveyance (Response, pp. 5-7). Finally, retail merchants also routinely sell and deliver goods to one individual and accept payment from another, such as when one party is an authorized buyer on another's credit card. *Sears Roebuck & Co. v. Ragucci*, 203 N.J.Super. 82, 495 A.2d 923 (Sup. N.J. 1985).

---

[3] Presumably *Cohen* intended "customer" to be synonymous with "buyer."

Menard next reasserts its argument set forth in the Motion that the Complaint contains only "bald assertions" and requires "significantly more information." (Amended Memorandum, p. 9). This argument was addressed in Plaintiff's Response at pp. 3-5 and 7-10.  As this Court noted in *Walmart*:

> . . . it seems more likely that the specific facts of the purchase transactions will have to be developed as this litigation proceeds...

> It is doubtful the Trustee has much additional information about the 300 or so purchase transactions at issue, and it almost goes without saying that a detailed description of each and every one of those transactions in the Complaint is simply not practical . . . the nature of the fraud here is readily apparent and the elements of the causes of action are expressly defined by statute. The Defendants are adequately put on notice of the basis of the claims alleged against them. There is no need for additional pleading of facts at this stage.

*Walmart*, Case 19-8122, Doc. 21, pp. 4-6.

**2.    The ROTA is not relevant to this case.**

Next, Menard argues that the ROTA creates an irrebuttable legal presumption; that is, a retailer is only legally capable of transferring title to a good to the person who pays for it, making it legally impossible for one person to pay for a good and for the title to be transferred directly to another. According to Menard, if a parent purchases a candy bar which the merchant delivers directly to his or her daughter, the parent is deemed to have acquired title to the candy bar even though he/she never took possession of it. Menard cites no case which declares the existence of this irrebuttable presumption.

The ROTA does not mandate the above result. "Sale at retail" is

10

defined as any transfer of ownership of or title to tangible personal property to a purchaser <u>for a valuable consideration</u>. "Purchaser" is defined as anyone who, through a sale at retail, acquires the ownership of or title to tangible personal property <u>for a valuable consideration</u>. 35 ILCS 120/1 (emphasis added). However, the above statutes only state that there must be valuable consideration; neither states that the purchaser must supply the consideration. It thus is entirely possible that Jones, Jones Lease or JP Rentals acquired ownership of or title to goods which the Debtor paid for.

Menard notes the ROTA also provides that "sale at retail" shall be construed to include any transfer of ownership or title to tangible personal property to a purchaser, for use or consumption by another person. This simply means that a sale at retail would have occurred had the purchasers, Jones, Jones Lease or JP Rentals, acquired goods paid for by the Debtor for the use or consumption by another person or company.

Menard also states that a retailer may collect reimbursement from purchasers for their sales tax liability[4] (providing the retailers provide purchasers refunds of any overcharges), citing *Nava v. Sears, Roebuck and Co.*, 2013 IL App (1st) 122063 (2013) at ¶14. Said case cites Section 2-40 of the ROTA:

---

[4]The Amended Memorandum incorrectly states that sales tax is paid by the person to whom

11

§ 2-40. Purchaser refunds. If a seller collects an amount (however designated) that purports to reimburse the seller for retailers' occupation tax liability measured by receipts that <u>are</u> <u>not</u> subject to retailers' occupation tax, <u>or</u> if a seller, in collecting an amount (however designated) that purports to reimburse the seller for retailers' occupation tax liability measured by receipts that <u>are</u> subject to tax under this Act, collects more <u>from the purchaser</u> than the seller's retailers' occupation tax liability on the transaction, <u>the purchaser</u> shall have a legal right to claim a refund of that amount from the seller.

35 ILCS 120/2-40 (emphasis added).

Under the first clause, the statute provides that the purchaser is entitled to a refund if the seller is reimbursed by anyone on a nontaxable sale. Thus, if Menard was reimbursed by the Debtor on a nontaxable sale, it would be obligated to refund such amount to the purchasers, Jones Lease, JP Rentals or Jones.

As to taxable sales, whether to pass a tax on to the consumer or absorb the cost of a tax is "purely a business decision." *Gore v. Indiana Ins. Co.,* 376 Ill.App.3d 282, 287, 876 N.E.2d 156, 315 Ill.Dec. 156 (1st Dist. 2007). The obligation of the purchaser to reimburse the seller, if imposed, is thus a contractual duty. As a general matter, all contractual duties are delegable. *OBO, Inc. v. Apache Corporation,* 566 S.W.3d 26, 31 (Tx. Ct. App. 2018), citing *Restatement (Second) of Contracts, § 318 (1981).* Even if Jones Lease, JP Rentals or Jones, as purchasers, had a contractual duty to reimburse the sales taxes to Menard, they could delegate that duty to the payor, the Debtor. That

---

title passes (p. 5).  ROTA imposes a tax on retailers.

12

the Debtor reimbursed Menard for the sales taxes does not automatically make it the purchaser.

Finally, even if the ROTA's definition of "purchaser" conflicts with the UCC's definition of "purchaser" or "buyer," the UCC definition controls in this case. The ROTA imposes a tax on retailers selling tangible personal property to purchasers and is the primary means of taxing the retail sale of tangible personal property. *People ex. rel. Lindblom v. Sears Brands, LLC,* 2019 IL App (1st) 180588, ¶6. The ROTA's main concern is thus to generate tax revenue, not to determine title, ownership or value issues in a non-sales tax related proceeding such as this one. On the other hand, the purpose of the UCC is to simply, clarify and modernize the law governing commercial transactions and to expand commercial practices (UCC Section 1-103(a)(1) and (2)). Article 2 governs transactions in goods. The issue in this case of who was the "buyer" of the goods or who received "value" in exchange for the payments will be determined under UCC Article 2 and the Bankruptcy Code, not under the ROTA. And, a term may have different meanings in different statutes:

> It is * * * fundamental that the legislature has the power to articulate reasonable definitions of any terms within its enactment (citations omitted). In addition, separate acts with separate purposes need not define similar terms in the same way, but, rather, the same word may mean one thing in one statute and something different in another, dependent upon the connection in which the word is used, the object or purpose of the statute and the consequences which probably will result from the proposed construction.

*People v. Ligon,* 2016 IL 118023, ¶ 26.

13

In fact, as Menard admits[5], to determine for taxation purposes when and to whom title passed, Illinois and Iowa courts-as well as courts of other states-look to the UCC: *Sprague v. Johnson,* 195 Ill.App.3d 798, 801-03, 552 N.E.2d 436, 142 Ill.Dec. 86 (4th Dist. 1990); *Continental Illinois Leasing Corp. v. Department of Revenue,* 108 Ill.App.3d 583, 587, 439 N.E.2d 118, 64 Ill.Dec. 189 (1st Dist. 1982); *Sturtz v. Iowa Dept. of Revenue,* 373 N.W.2d 131, 134 (1985); *Sherwood Diversified Services Sherwood Diversified Services, infra* at 1364.

### III. CONCLUSION

WHEREFORE for the foregoing reasons, Plaintiff prays that this Court deny the Amended Motion, and that Plaintiff be granted such other relief as is just.

<div style="margin-left:40%">

Jeana K. Reinbold, solely as Chapter 7 Trustee of the Estate of I80 Equipment, LLC

By:/s/ Andrew W. Covey
One of her attorneys #06183817
416 Main Street, Suite 700
Peoria, IL  61602
Tel:  309-674-8125
Email:  acovey1@hotmail.com

</div>

---

[5]Amended Motion, p. 3, ¶9.

14

## PROOF OF SERVICE

The undersigned certifies that a true and accurate copy of the above document was duly served upon anyone who has electronically entered his appearance herein by notice of electronic filing on 6/17/20.

/s/Andrew W. Covey