**IT IS SO ORDERED.**

**SIGNED THIS: September 1, 2020**

_____
**Thomas L. Perkins
United States Chief Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| I-80 Equipment LLC, ) | Case No. 17-81749 |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |
| Jeana K. Reinbold, not individually but ) | |
| solely in her capacity as Chapter 7 Trustee of ) | |
| the Estate of I80 Equipment, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Adv. No. 19-8110 |
| ) | |
| Menard, Inc., ) | |
| ) | |
| Defendant. ) | |

**ORDER**

    The Defendant, Menard, Inc., filed an amended motion to dismiss the Trustee's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has the matter under advisement following extensive briefing by the parties. Menard recently filed a written request to present oral argument. Because of the extensive briefing, the

Court's familiarity with the issues from similar adversary proceedings and the absence of binding precedent that would support dismissal, the Court finds that it will not be aided by oral argument and, therefore, Menard's motion will be denied. *See* CDIL—LR 7.1(A)(1)(d).

The complaint alleges two causes of action, the first for avoidance of transfers made with actual fraudulent intent under section 548(a)(1)(A) and the second for avoidance of the same transfers under the alternative theory of constructive fraud pursuant to section 548(a)(1)(B).

The complaint alleges common facts that support both causes of action, summarized as follows. The Debtor, whose funds were transferred, is I-80 Equipment LLC, an equipment refurbishing business owned and operated by Erik P. Jones as its sole member and sole manager. Jones was also the sole member and sole manager of two real estate leasing businesses, Jones Lease Properties LLC and J.P. Rentals LLC. Within the two years prior to the petition date, I-80's accounting records show that it paid Menard over $700,000. The complaint alleges that the goods purchased at Menard's stores were not for the benefit of I-80 but, rather, were for the use and benefit of Erik Jones personally or his other businesses, Jones Lease and J.P. Rentals.

The allegations are supported by copies of certain accounting records of I-80, attached to the complaint, indicating that I-80 booked each payment to Menard either as an amount due from Jones Lease or due from J.P. Rentals or as a Member's Draw. The accounting records provide factual support to the Trustee's theory that Erik Jones was using or authorizing the use of I-80's funds to make purchases of goods from Menard stores that were used, not by I-80, but by Jones personally or by Jones Lease or J.P. Rentals, such that I-80 received no value from its payments. Those records are sufficient to enable the complaint to meet the plausibility threshold.

This Court denied a motion to dismiss a similarly pleaded complaint by the same Trustee against Walmart Inc. in adversary number 19-8122. The same principles of law and reasoning apply here in large part. The difference here is that Menard is focusing on an issue raised by this Court in its order denying the motion to dismiss in the Walmart adversary. In that order, it was noted that the Walmart defendants had not submitted any authority to support the proposition that a debtor that authorizes the use of its funds to make a retail purchase is deemed, as a matter of law, to have received the goods purchased or the value thereof for purposes of §548.

The issues of who received possession, ownership and, ultimately, the value of the purchased goods relates to the constructive fraud requirement that a trustee prove that the debtor "received less than reasonably equivalent value in exchange for" the transfers sought to be

avoided. As stated in the Walmart order, the issue of whether a debtor "received" the goods, and a value reasonably equivalent to what it paid, is a question of fact, not subject to determination on a motion to dismiss. Which person or entity took possession of the purchased goods and took title to (ownership of) the goods, two separate issues, are questions of fact that are material to the determination of who received value. With respect to the Walmart complaint, this Court concluded that the Trustee had carefully, and successfully, pleaded the complaint to support the plausible interpretation that the value of the purchased goods was provided not to I-80 but to Erik Jones or his other companies. The same conclusion is true with respect to the Trustee's similarly pleaded complaint against Menard.

Attempting to establish that I-80, having paid for the purchased goods, should be deemed as a matter of state law to have taken title to the goods, and, therefore, to have "received" value for purposes of §548, Menard, in its amended motion, relies upon the Illinois Retailers Occupation Tax Act and Article 2 of the Uniform Commercial Code and certain caselaw. As a matter of federal procedure, it is well established that a cause of action should be dismissed where, as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Nietzke v. Williams,* 490 U.S. 319, 327 (1989). In the process of evaluating a motion to dismiss, the trial court must view the allegations in the light most favorable to the plaintiff, including drawing reasonable inferences that support the plaintiff's theory. Viewed in this light, if a plausible set of facts exists that would entitle the plaintiff to the requested relief, the motion to dismiss must be denied.

With respect to the two statutes relied upon by Menard, Menard contends that they must be applied in the context of a section 548 avoidance action; that under these laws, one who pays for goods is deemed to have taken title to the goods; and, by taking title, that purchaser is deemed or conclusively presumed to have received the value of the goods for purposes of §548 of the Bankruptcy Code. The Court disagrees.

As a federal statute, the provisions of the Bankruptcy Code are interpreted as a matter of federal law. While state statutes may play an important role in determining a debtor's property rights and liabilities, applying the Bankruptcy Code to those rights and obligations is ultimately a question of federal law. *In re Groetken,* 843 F.2d 1007, 1013 (7th Cir. 1988). Additionally, resolving a fact intensive inquiry necessary to decide a question of law is not appropriate at the

3

motion to dismiss stage. *Craftwood II, Inc. v. Generac Power Sys., Inc.,* 920 F.3d 479, 482 (7th Cir. 2019).

The Illinois Retailers Occupation Tax Act, 35 ILCS 120/1 *et.seq.,* even if it could be properly applied in the context of a Bankruptcy Code provision, which is not at all clear, provides no answer to the relevant question here. Section 1 of the Tax Act defines a "sale at retail," which triggers a tax liability, as "any transfer of the ownership of or title to tangible personal property to a purchaser," and defines Purchaser as "anyone who, through a sale at retail, acquires the ownership of or title to tangible personal property for a valuable consideration." As the facts are pleaded in the Trustee's complaint, each of the subject transactions involved a sale at retail of goods sold by Menard to a purchaser, thereby triggering Menard's liability to pay a sales tax to the State of Illinois. While it defines Purchaser as one who takes title or acquires ownership, the Tax Act does not necessarily tie the payment of the purchase price to title or ownership.

As acknowledged by Menard, the Tax Act codifies the terms of liability for the Illinois sales tax. Under the Tax Act, "Purchaser" is defined by receipt of title to the purchased goods, without regard to the identity of the transferor of the "valuable consideration." Contrary to Menard's argument, the Tax Act does not prohibit, as a matter of law, a determination that someone other than the party paying the purchase price may have received and taken title to the goods. Even if the Tax Act did include such a provision, this Court sees no reason why a provision of the Illinois sales tax law should control the determination of value received under §548 of the Bankruptcy Code. Like the issue of who took possession of the purchased goods, who took title is a fact that is relevant to the ultimate issue of whether I-80 received value, but even if it is established that I-80 did hold title for some period of time, that fact by itself, may not be controlling. At this point, the Court views the inquiry into value received as calling for a totality of the circumstances analysis.

As pleaded in the complaint, especially considering the attached accounting records, the Trustee has plausibly alleged that the "purchaser" was not I-80. Nothing in the Tax Act defeats this allegation. Identifying who took title to the goods in each retail sale transaction is a fact intensive inquiry that cannot be resolved on a motion to dismiss.

Menard fares no better with its reliance on Article 2 of the Uniform Commercial Code for the proposition that I-80 took title to the purchased goods as a matter of law simply because its

funds were used to pay the purchase price. Title having vested in I-80 at the point of purchase, argues Menard, means that I-80 received equivalent value for its payments, also as a matter of law, meaning that the particular facts of each purchase transaction would be immaterial. So, for example, if a J.P. Rentals employee went to a Menard's store and purchased construction materials for a remodeling project on a rental house owned by J.P. Rentals, but paid for the materials with a credit card issued to I-80, Menard would argue that I-80 took title to and received the value of the construction materials notwithstanding it was never in possession of and had no use for them. Article 2 compels this conclusion and permits no contrary interpretation, according to Menard.

The Court disagrees. Nothing in Article 2 mandates a singular identity between the party who pays the purchase price and the buyer who takes title to the goods. Article 2 defines a "sale" as consisting of the passing of title from seller to buyer for a price. See §2-106. Article 2 recognizes that all sales transactions necessarily involve a contract, and identifies two types of sales contracts: (1) a contract to sell goods at a future time, and (2) a "present sale" of goods, which means "a sale which is accomplished by the making of the contract." §2-106. Unless an item is special ordered, typical off-the-shelf purchases at retail stores are "present sales."

Every sales transaction within the scope of Article 2 has a buyer and a seller. By definition under §2-106, the buyer is the one who acquires title, but where the price for the goods is paid by someone else, which is certainly permissible, this creates a divergence of identity between the person who took title to the goods and the one who actually paid the purchase price. Under a contract to sell goods at a future time, the different identities of the payor and the one taking title (and likely possession as well), would be stated in the contract so the seller would know to whom to make delivery. With a "present sale" at a retail store for cash or other immediate payment, however, with no written contract, the identity of the party taking title to the goods is not disclosed to the seller. The reason why seems clear, in that retail sellers don't usually care to whom the goods are sold so long as payment is made at the point of sale, with delivery made to the person making payment.

Article 2 does not set any parameters with respect to the identity of the buyer in a sales transaction. It does not deem the party paying the purchase price to be the buyer. Neither is there anything in Article 2 that dictates that the person who first takes possession of the goods at the point of sale is, *ipso facto,* the "buyer" that acquires title. The statutory silence is warranted by

the commercial reality that the identity of the buyer is, again, of no concern to a typical retail seller who is not providing a bill of sale or other document of title to a designated party.

Menard relies upon *In re Cohen,* 182 B.R. 46 (Bankr. C.D. Cal. 1994), *aff'd,* 199 B.R. 709 (9th Cir. BAP 1996), where the debtor, Mr. Cohen, ran a Ponzi scheme where he purchased vehicles and resold them to participants, allegedly for a wholesale price. The chapter 7 trustee sued the dealership alleging that Cohen's payments to the dealership for the vehicles were fraudulent transfers. Based upon the evidentiary record created by the summary judgment procedure, the bankruptcy court found as a matter of fact that the debtor, Cohen, was "plainly the dealers' transferee of the vehicles," notwithstanding that they were delivered directly to the ultimate purchasers, since Cohen had absolute dominion and control to direct the dealers where to deliver the vehicles, and received fair value for his payments. The bankruptcy court found, based upon the facts in the record, that Cohen became the owner of the cars when, in exchange for paying the purchase price, he "received either the right to own the vehicle if purchased for his own account or the right to direct disposition of the vehicle if purchased for the benefit of another." 182 B.R. at 47. The BAP affirmed, reasoning that Cohen was not acting as a mere agent for the purchasers, since he acquired equitable title and a special property interest in and to the vehicles when he paid the dealers the purchase price, so that when delivery was later completed to the downstream purchasers, title nonetheless passed to Cohen.

The *Cohen* case is readily distinguishable. First, on Menard's motion to dismiss under Rule 12(b)(6), there is no evidentiary record and factual determinations are not permitted. Second, the sales of vehicles to Mr. Cohen were not ordinary retail sales initiated and completed at the point of sale --- they were not a "present sale" as defined in §2-106. Rather, they were made based upon vehicle orders placed and paid for pursuant to a written contract for later delivery, what §2-106 calls "a contract to sell goods at a future time." Third, Menard relies upon the BAP's dicta addressing whether the ordinary retail nature of a vehicle purchase transaction, for purposes of analyzing the dealers' liability, should be viewed differently because Cohen was running a Ponzi scheme, concluding that "so long as a merchant has no reason to suspect the customer's Ponzi scheme or other skullduggery, sales made under ordinary commercial terms should be viewed as transactions between merchant and customer." I-80 was not running a Ponzi scheme and it is not alleged that Menard knowingly participated in a fraud. Finally, *Cohen* does not address the factual circumstance alleged in the Trustee's complaint involving how

6

intercompany transfers and member draws may affect the value received issue. The *Cohen* case does not stand for the proposition that ordinary retail store sales cannot, as a matter of law, be avoided as fraudulent transfers. The *Cohen* decision provides no support for Menard's motion to dismiss.

Menard also relies upon *In re Think Retail Solutions, LLC,* 2019 WL 2912717 (Bankr. N.D. Ga.), which cites *In re Caribbean Fuels America, Inc.,* 688 Fed. Appx. 890 (11th Cir. 2017) for the proposition that value under §548 is measured by the objective value of the property provided to the debtor, not by the subjective benefit the debtor derived from the property. In those cases, the issue was the appropriate standard of valuation. The Trustee's complaint against Menard alleges that I-80 neither received nor used the goods purchased from Menard, and thus received no value at all; the standard of valuation is not at issue for purposes of Menard's Rule 12(b)(6) motion. In *Think Retail,* the court also made an evidentiary determination that the Trustee had failed to establish a *prima facie* case that the transfers were made with the actual intent to hinder, delay or defraud creditors, an issue that is premature on a motion to dismiss.

Menard also misplaces its reliance upon *Think Retail* for its argument that the Trustee's constructive fraud count must be dismissed as a matter of law since "Here, as in TRS, the Complaint concerns arm's length transactions where the Debtor transferred property and received value." (Doc. 21, p. 13) This argument again glosses over the fact that the Trustee has alleged that I-80 did not receive the goods or any value in exchange for its payments to Menard, which is a question of fact. Neither *Think Retail* nor any other judicial opinion cited by Menard holds that the party who pays the purchase price for goods purchased at retail is, by that fact alone, deemed as a matter of law to have received the value of the goods purchased for purposes of §548. The absence of such authority is no surprise in light of the extensive body of law that has developed dealing with whether indirect benefits to a debtor in exchange for an otherwise fraudulent transfer may constitute reasonably equivalent value. See, e.g., *In re Mid-Illini Hardwoods, LLC,* 576 B.R. 598 (Bankr. C.D. Ill. 2017). If payment alone dictated the "value received" question, there would be little reason for courts to consider whether an indirect benefit constituted reasonably equivalent value.

There is no doubt that whether Erik Jones had a fraudulent intent is a material fact for purposes of the actual fraud Count that cannot be resolved at this stage. Likewise, whether I-80, as opposed to Jones or his other businesses, received the value of the goods purchased from

7

Menard is a material question of fact for purposes of the constructive fraud Count. In addition, the applicability of §548(c), which also depends upon whether Menard gave value to I-80 in exchange for its payments, requires factual determinations.

The Trustee's complaint adequately alleges that the goods purchased at the Menard stores were intended for the use and benefit of parties other than the Debtor, and the value of the goods was received by those third parties, not by the Debtor. The inference most favorable to the Trustee, which the Court must draw at this stage, is that the persons who made the purchases were employees or agents of Jones Lease, J.P. Rentals or Erik Jones, and were not acting as agents of I-80 when the purchases were made, although they may have been authorized to make the purchases on I-80's credit card. Menard incorrectly draws a factual inference contrary to the Trustee when it argues that I-80 became the owner of the goods when its (meaning I-80's) agent or representative "walked out of Menard with the goods purchased." (Doc. 21, p. 9). That is an inference that would favor Menard and, as such, is not permitted to be drawn at this point. Whether the Trustee can prove her factual allegations and those favorable inferences, remains to be seen. But for purposes of the motion to dismiss, the Court concludes that there is no controlling principle of law that would warrant dismissal without giving the Trustee the opportunity to marshal and present evidence.

Finally, Menard cites several other court opinions that discuss, in a variety of contexts, a seller's good faith and lack of awareness of any fraud as important considerations. Under the allegations of the complaint, Menard is the initial transferee of the funds transferred from I-80. Under §550, the defense afforded to downstream transferees that take an avoidable transfer for value, in good faith, and without knowledge of its voidability, is not a defense available to an initial transferee. Neither is it necessary for the Trustee to prove Menard sold the goods with knowledge of voidability. Similarly, as previously discussed, §548(c) provides that certain transferees may retain an avoidable transfer that was taken for value and in good faith, but only to the extent that the transferee gave value to the debtor, which raises the same question of fact that is an element of the prima facie case for avoidance of a constructively fraudulent transfer, i.e., whether it was I-80 that received the value of the goods sold by Menard or, instead, Erik Jones or one of his other businesses.

For the foregoing reasons, Menard's request for oral argument is Denied; Menard's amended motion to dismiss the complaint is Denied. Menard shall Answer the complaint within 21 days.

**SO ORDERED.**

# # #