**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| In re:<br><br>I80 Equipment, LLC,<br><br>    Debtor. | Case No. 17-81749<br><br>Chapter 7 |
| Jeana K. Reinbold, solely as Chapter 7 Trustee of the Estate of I80 Equipment, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>Menard, Inc.,<br><br>    Defendant. | Adversary Case No. 19-08110<br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANT MENARD, INC.'S RENEWED MOTION FOR
SUMMARY JUDGMENT ON SECTION III**

Defendant Menard, Inc., ("Menard"), by its undersigned attorneys, hereby moves for renewed summary judgment on section III pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable to the above-captioned adversary proceeding pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure. Menard seeks judgment in its favor and against Jeana K. Reinbold, solely as Chapter 7 Trustee of the Estate of I80 Equipment, LLC ("Trustee"), with respect to all of the claims set forth in Trustee's complaint ("Complaint") on the basis that Menard is a good faith transferee ("Motion") as a matter of both state and federal law. Because Debtor I80 Equipment, LLC ("Debtor") must act through an agent, as a matter of law, transfers of goods to an agent of Debtor impute value to Debtor. There is no dispute that Menard acted in good faith. In support of the Motion, Menard states as follows:

**<u>Introduction</u>**

Menard moves for summary judgment on its affirmative defense that Menard received the transfers in good faith and provided value to the Debtor. Trustee's attempt to hold Menard

accountable for the alleged corporate malfeasance of certain agents of Debtor, including at least former owner Erik P. Jones ("Jones"), is improper, outside the scope of Trustee's powers, is a misuse of limited estate resources, and is contrary to public policy. For these reasons, and as discussed more completely below, Menard's Motion should be granted in its entirety.

## Undisputed Immaterial Facts and Procedural History

Debtor was an Illinois limited liability company that purchased and refurbished bucket trucks for resale. ECF No. 1, ¶¶ 7 & 9; ECF No. 30, ¶ 7. On December 6, 2017, Debtor filed a voluntary petition for chapter 7 bankruptcy. Case No. 17-81749, ECF No. 1. On December 18, 2018, Debtor was involuntarily dissolved. ECF No. 1, ¶ 7; ECF No. 30, ¶ 7. Menard is a family-owned chain of over three-hundred home improvement stores with locations across the country. ECF No. 96; Trustee I and II Response, ¶ 4.

At all relevant times, Jones was the sole member and manager of Debtor. ECF No. 1, ¶ 8; Trustee's Response to Menard's Motion for Summary Judgment ("Trustee I and II Response"), ¶ 3. During that relevant period, Jones was also the sole member and manager of two other Illinois limited liability companies: Jones Lease Properties, LLC ("JL") and J.P. Rentals, LLC ("JP"). ECF No. 1, ¶¶ 10, 12, 13, & 15; Trustee I and II Response, ¶ 3. JL rents and manages single-family and multi-family rental options in the Illinois Quad Cities area. ECF No. 1, ¶ 11. JP rentals offered rental options in commercial, multi-unit properties. ECF No. 1, ¶ 14; Trustee I and II Response, ¶ 3.

On December 5, 2019, Trustee commenced this adversary proceeding seeking to avoid $707,322.95 of payments (mostly payment by credit card) to Menard, which Trustee alleges to be fraudulent transfers, made by or at the direction of Debtor to Menard allegedly on account of or for the benefit of Jones, JL, and/or JP (collectively, the "Transfers"). *See* ECF No. 1, ¶¶ 16 & 17. The Complaint contains two counts: Count I for actual fraud under Section 548(a)(1)(A) of the

Bankruptcy Code and Count II for constructive fraud under Section 548(a)(1)(B) of the Bankruptcy Code. *See Id*.

## Undisputed Material Facts

1. Trustee seeks to avoid the purchases made at Menard locations using a credit card held by Debtor ("Transactions") within two years of the Petition Date. ECF No. 1, Exs. A-C; Trustee I and II Response, ¶ 8.

2. Apart from one purchase on April 6, 2016, the Transactions all involved payment using a credit card. ECF No. 1, Exs. A-C; Trustee I and II Response, ¶ 9.

3. One purchase on April 6, 2016, was not made via credit card and was for $80.46. ECF No. 1, Ex. A, p. 2; Trustee I and II Response, ¶ 10.

4. The Transactions comprise $707,242.49 in payments made to Menard using a credit card. ECF No. 1, Exs. A-C; Trustee I and II Response, ¶ 11.

5. On or about September 21, 2009, Debtor entered into a credit card agreement with First Midwest Bank. **Exhibit B**, attached hereto.

6. Paragraph 2 of the First Midwest Bank credit card agreement states:

2. *Use of Cards.* Cards and Cardholder Accounts shall be used for purchase anywhere the Visa ® Commercial Card is accepted.  We are not responsible if any merchant, financial institution, or other person refuses to honor the Card.  **We reserve the right to deny authorization for any Card transaction.**

**The Company warrants to us that each individual for whom the Company shall request a Cards shall be an agent** or employee of the Company … and shall have a business or commercial purpose for the Card…Regardless of the purpose for which the Cardholder obtains credit through the use of a Card or Cardholder Account, the Company agrees to pay us for all such credit and related interest, fees, and charges…**The Company must notify us at 1-800-221-5920 or by writing us at 50 West Jefferson St, Joliet, Illinois 60432, if the Company want us to cancel or suspend any Cardholder Account due to termination of a Cardholder's employment or other reasons.**

*Id.* (emphasis added).

7. Paragraph 9 of the Credit Card Agreement states:

…a Card in the possession of an individual to whom a Card is issued or who was authorized by the Company to use the Card shall not be considered … in the hands of an unauthorized person and the Company continues to be responsible and liable to us for the use of such a Card until it is returned to us or authorization is blocked by us.

*Id.*

8. Each of the Transactions were made by a credit card user that was authorized to use Debtor's credit card as an agent of Debtor or who got permission to use Debtor's credit card as an agent of Debtor. ECF No. 83 ¶¶ 30–32.

9. Funds paid by Debtor's credit card company were not deposited into a bank account belonging to Debtor before the funds were transferred to Menard. Trustee I and II Response, at 6–7.

10. At each of its locations, Menard processes hundreds of transactions, via credit card, debit card, check, and cash, daily. ECF No. 95-1, ¶ 3; Affidavit of Gary Trkula, ¶¶ 3-4, attached hereto as "**Exhibit A**."

11. For each retail transaction completed at each Menard location, a cashier processes payment in the form of either credit card, debit card, check, or cash. ECF No. 95-1, ¶ 4; Aff. Trkula, ¶ 3-4.

12. For each retail transaction completed at each Menard location, a retail price must be paid before the goods may be taken from Menard's location. ECF No. 95-1, ¶ 5; Aff. Trkula, ¶ 5.

13. None of the cashiers, front-end managers, or store general managers at any of Menard's locations are directed to inquire of a guest what the guest's intentions are with respect to the goods purchased. ECF No. 95-1, ¶ 6; Aff. Trkula, ¶ 6.

14. None of Menard's cashiers, front-end managers, or general managers had any reason to believe that any of the retail transactions at issue here involved any type of fraudulent scheme to hinder, delay, or defraud Debtor's creditors. ECF No. 95-1, ¶ 9; Aff. Trkula, ¶ 7.

15. For each transaction at Menard using a credit card, Menard issues a receipt that states, "[t]he Cardholder acknowledges receipt of goods/services in the total amount shown herein and agrees to pay the card issuer according to its current terms." Aff. Trkula, ¶ 8.

16. Those receipts also state, "THIS IS YOUR CREDIT CARD SALES SLIP PLEASE RETAIN FOR YOUR RECORDS." Aff. Trkula, ¶ 9.

17. Certain goods purchased by credit card were returned by an agent of Debtor or by someone acting on behalf of Debtor, which resulted in a refund to Debtor's credit card. *See, e.g.*, Exhibit C.

18. Debtor, acting through its agents, as buyer, and Menard, as seller, never discussed any third party-beneficiaries to the Transactions.

19. Apart from the receipts Menard issued for each of the Transactions, Menard did not enter into any contracts or agreements with Debtor, its agents, or its affiliates.

20. On July 31, 2009, Trustee filed Proof of Claim 5-2 in the JL Bankruptcy case ("Claim 5-2"), Case No. 19-800014, in which Trustee stated, "between July 1, 2014 and December 6, 2017, approximately $5,419,440.62 of I80's funds were used to purchase real estate and other assets … **which constitute gratuitous transfers that were not supported by consideration.** Claim 5-2, at 4; Trustee I and II Response, at p. 19.

## Argument

Summary judgment should be granted if "[t]he movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Fed. R. Bankr. P. 7056 (incorporating Rule 56 in adversary proceedings).

A "genuine" factual dispute exists only when there is sufficient evidence for a reasonable fact-finder to find in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it is "outcome-determinative under governing law." *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. "[W]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable [finder of fact] could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007).

I.   **TRUSTEE'S CLAIMS FAIL AS A MATTER OF LAW BECAUSE MENARD HAS A COMPLETE AFFIRMATIVE DEFENSE UNDER § 548(c) OF THE BANKRUPTCY CODE.**

Menard incorporates by reference its Motion for Summary Judgment [ECF 128] and the arguments contained therein, including the threshold argument that Debtor did not transfer an interest in property because the payments were made by credit card. Even if the Court concludes that Trustee could establish a *prima facie* case under Section 548 of the Bankruptcy Code, which she cannot, as a matter of 7th Circuit precedent, Menard has a complete defense to the actual and constructive fraud claims because the Debtor received value for the goods and Menard, as transferee, took the transfers[1] in good faith. 11 U.S.C. § 548(c). Section 548(c) of the Bankruptcy Code provides an affirmative defense to a transferee who "takes for value and in good faith . . . to the extent that such transferee . . . gave value to the debtor in exchange for such transfer . . . ." 11

---

[1] Menard here refers to the payments by credit card as transfers for simplicity of the discussion but notes for the record that Menard challenges that the definition of transfers under Section 101(54) is met because the payments cannot be characterized as "(D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with – (i)**property; or (ii) an interest in property**.

U.S.C. § 548(c).

### a. Menard's Good Faith is Indisputable.

There is no dispute that Menard took the Transfers from Debtor in good faith.[2] The inquiry for good faith is "[w]hether the transferee was placed on inquiry notice regarding the fraudulent nature of the transfer and if so, whether the transferee was diligent in its investigation regarding the transfer." *Maxwell v. United States (In re Horizon Grp. Mgmt., LLC)*, 617 B.R. 581, 591 (Bankr. N.D. Ill. 2020) (citing *Bear, Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 22-23 (S.D.N.Y. 2007)). To determine whether a transferee was placed on inquiry notice, the question is whether the transferee was aware of "suspicious facts that would have led a reasonable [person], acting diligently, to investigate further and by doing so discover[] wrongdoing." *Id.* (quoting *Grede v. Bank of N.Y. Mellon Corp. (In re Sentinel Mgmt. Grp., Inc.)*, 809 F.3d 958, 961 (7th Cir. 2016)). Transferees do not have a duty to start investigating when "[n]othing that he knows points to the transfer being fraudulent." *Id.*

Debtor completed hundreds of Transactions at Menard locations in Illinois and Iowa. None of Menard's agents (cashiers, front-end managers, or store managers) had any reason to believe that the goods purchased were being acquired fraudulently. There is no allegation (or evidence) that Menard was put on actual or inquiry notice of any fraud. Jones or another person, as agent for the Debtor, came into Menard's stores and selected goods to purchase, and Menard's cashiers processed credit card payments in exchange for the goods. Moreover, Jones or the other agents of Debtor were authorized to use Debtor's credit cards and to complete each of the Transactions. Menard took each of the payments from Debtor in good faith.

---

[2] Trustee admits that Menard acted in good faith, but submits that Menard's good faith is immaterial despite Section 548(c). Trustee I and II Response, ¶¶ 16-17.

### b. Menard Provided Value to the Debtor.[3]

To prevail on its good faith defense under Section 548(c) of the Bankruptcy Code, Menard must also establish that it provided value to the Debtor.

There is no dispute that Menard is the party responsible for payment to Menard by credit card in each of the Transactions. Under Article 2 of the Illinois Uniform Commercial Code, a "buyer" is a "person who buys or contracts to buy goods." 810 ILCS 5/2-103(1)(a). In a transaction for the sale of goods, "the *obligation* of *the* buyer is to accept and pay in accordance with the contract." 810 ILCS 5/2-301 (emphasis added). A buyer is a single party that both pays for and accepts goods, and the act of acceptance is deemed an "obligation." *Id.*

Of course, a party may perform his duty—or obligation—under Article 2 through a delegate. 810 ILCS 5/2-210(1). Consistent with principles of agency, however, "[n]o delegation of performance relieves the party delegating of any duty to perform or any liability for breach." *Id.*; *see also Burba v. Baltic-Am. Line*, 233 Ill. App,. 132, 136 (Ill. Ct. App. 1924) ("[A]s a general rule . . . whenever a person has held out another as his agent . . . his authority to such other to so act for him in that capacity will be conclusively presumed to have been given, so far as it may be necessary to protect the rights of third persons who have relied thereon in good faith and in the exercise of reasonable prudence; and he will not be permitted to deny that such other was his agent."). Here, there is no dispute that Debtor's agents used Debtor's credit cards in the Transactions.

"Under Illinois law, an agent does not own property transferred to it by or for the benefit of the principal." *Greenfield Direct Response, Inc. v. Adco List Mgmt. (In re Greenfield Direct*

---

[3] The transfer of value element under 11 U.S.C. § 548(c) also operates to negate the reasonably equivalent value element that the Trustee must prove to establish constructive fraud under 11 U.S.C. § 548(a)(b)(i). To the extent that the Court finds summary judgment on Menard's good faith improper at this juncture, Menard requests that the Court still consider the following motion for summary judgment as it relates to 11 U.S.C. § 548(a)(b)(i).

*Response, Inc.)*, 171 B.R. 848, 857 (Bankr. N.D. Ill. 1994); *see also Just Pants v. Bank of Ravenswood*, 483 N.E.2d 331, 335 (Ill. Ct. App. 1985) ("An agent does not have title to the property of the principal . . . .").

Because Debtor is the party responsible for all the payments to Menard, Debtor was the "buyer" in each of the Transactions under Article 2 of the Illinois Uniform Commercial Code. Debtor, as the "buyer", as a matter of law, was also the party that accepted goods from Menard.[4] Acceptance of the goods by Debtor via an agent does not change this legal conclusion.

Because Debtor was the buyer and as a matter of law accepted the goods, it also obtained title to the goods purchased at Menard. Under Article 2, "a 'sale' consists of passing of title from the seller to the buyer for a price." 810 ILCS 5/2-106. "[U]nless otherwise *explicitly agreed* title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of goods . . . ." 810 ILCS 5/2-401(2) (emphasis added); *see also* 810 ILCS 5/2-401(1) ("[T]itle to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties."). Debtor and Menard never discussed, let alone explicitly agreed, that title would pass in any manner inconsistent with the default rules under Article 2. Title to the goods transferred directly from Menard to Debtor immediately upon completion of each of the Transactions. Moreover, the receipt for each Transaction states that the Cardholder—in this case Debtor—"acknowledges receipt of goods/services in the total amount shown herein and agrees to pay the card issuer according to its current terms." Aff. Trkula, ¶ 9. Through each agent and authorized user of Debtor's credit card, as a matter of law, Debtor "acknowledge[d] receipt of goods/services in the total amount shown [therein]…" *Id.*

---

[4] Trustee would have this court believe "who" accepted the goods is a factual dispute. Not so under Article 2 of the Illinois Uniform Commercial Code. It is a legal conclusion based solely on the terms of the transaction.

A purchase and sale of goods is a contract. *Johnson v. Marshall Field & Co.*, 291 N.E.2d 310, 314 (Ill. Ct. App. 1972). "Whether someone is a third-party beneficiary depends on the intent of the contracting parties, as evidenced by the contract language." *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 924 (Ill. Ct. App. 2009). "If a contract makes no mention of the plaintiff or the class to which he belongs, he is not a third-party beneficiary of the contract." *Id.*

Debtor, as buyer, and Menard, as seller, never discussed any third party-beneficiaries to the Transactions. And apart from the receipts Menard issued, Debtor, its agents, and its affiliates never entered into any contracts with Menard. None of Menard's cashiers, front-end managers, or general managers had any reason to believe that any of the Transactions may have been for the benefit of a third-party. There is no evidence to suggest that Debtor and Menard ever held a conversation identifying Jones, JL, or JP as potential third-party beneficiaries of any of the Transactions. There certainly is no contract, written or oral identifying Jones, JL, or JP as potential third-party beneficiaries of the Transactions. The only documentation between Debtor and Menard for any of the Transactions are the receipts issued by Menard. Those receipts read: "The Cardholder acknowledges receipt of goods/services in the total amount shown herein and agrees to pay the card issuer according to its current terms." At this point it bears repeating that the cardholder here was Debtor.

Each of the Transactions are sales governed by Article 2 of the Illinois Uniform Commercial Code. There is no dispute that Menard was paid by credit card, and that Debtor is the owner of the credit card accounts. Because Debtor is the party responsible for the credit card payments to Menard, it is the buyer. As buyer, Debtor is also the party that accepted goods from Menard as a matter of law under Article 2, and under the sale contract with Menard (*i.e.*, the receipts). This is further bolstered by the terms of the credit card agreements. See Exhibit B.

Because Debtor both paid for and accepted goods from Menard, it is a "buyer" as that term is used in Article 2.

Under Article 2, title transferred directly from Menard to Debtor immediately upon completion of each of the Transactions. Title to goods is value under 11 U.S.C. § 548(c). The Bankruptcy Code defines "value" as "[p]roperty, or satisfaction or securing of a present or antecedent debt of the debtor . . . ." 11 U.S.C. § 548(d)(2)(A). Title connotes legal ownership of property. *Stable Invs. P'ship v. Vilsack*, 775 F.3d 910, 916 (7th Cir. 2015); *see also Title*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "title" as "[l]egal evidence of a person's ownership interest in property."). Menard transferred property (the "goods") to Debtor, and in doing so, Menard gave "value" to debtor in good faith.[5]

Section 548(c) only serves as an affirmative defense to a fraudulent transfer "to the extent" that the transferee gave value. *See Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 897 (7th Cir. 1988) ("Section 548(c) . . . gives the initial recipient of a fraudulent conveyance a lien against any assets it hands back, 'to the extent that such transferee . . . gave value to the debtor in exchange for such transfer.'"). The extent of the value given from Menard to Debtor is easily ascertainable in this instance because each of the Transactions were conducted at retail prices totaling $707,322.95. Menard has a complete affirmative defense to each of Trustee's claims because Menard gave $707,322.95 of value to directly to Debtor in good faith when title to the goods were transferred from Menard to Debtor. And, in certain instances, when Debtor or an agent acting on behalf of Debtor returned goods to Menard, Menard issued a credit to Debtor's credit card. See Exhibit C. That is, because Debtor had title and possession of the goods, it was able to

---

[5] Though not necessary for this Motion, Menard submits that after the conclusion of the Transaction, which is an ordinary retail sales transaction, Debtor engaged in a separate and subsequent **gratuitous transfer of the goods** (in which Debtor had an interest in the property since Debtor held title to that property) to a third party.

direct a return and obtain the credit for the same value as that originally paid for the good.

The Court should grant summary judgment in Menard's favor. Such a result would be consistent with the conclusion of Judge Doyle of the Bankruptcy Court for the Northern District of Illinois in a case with facts nearly identical to those here. *Peterson v. TTS Granite, Inc (In re Mack Indus. Ltd.)*, 622 B.R. 887 (Bankr. N.D. Ill. 2020). The debtor in *Mack Industries* was engaged in the business of flipping houses. *Id.* at 891. Trustee sought to avoid payments made by the debtor to the defendant TTS Granite ("TTS") for granite purchased by Debtor but installed by TTS in properties other than those owned by the debtor. *Id.* The trustee argued that because TTS installed the granite in properties owned by third parties, TTS provided no value to the debtor. *Id.*

TTS argued that the trustee's constructive fraud claims under 11 U.S.C. § 548(a)(1)(B) and the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/5(a) were ripe for dismissal because it provided reasonably equivalent value to the debtor. *Id.* at 892. **The court agreed**. *Id.* The court recited a three-part test for determining whether the debtor received reasonably equivalent value: (1) did the debtor receive some value, (2) was the value received in exchange for the transfer by the debtor, and (3) did the value received by the debtor have a reasonable equivalence to what the debtor transferred. *Id.* at 893 (citing *Reinbold v. Morton Community Bank (In re Mid-Illini Hardwoods, LLC)*, 576 B.R. 598, 604 (Bankr. C.D. Ill. 2017)). The parties disagreed only as to the first element—whether the *debtor* or third-parties received value in the exchanges. *Id.*

The *Mack Industries* court held that as a matter of law, the debtor received value, and that the "analysis regarding reasonably equivalent value does not change when a third party benefits from the transfer." *Id.* at 894. Relevant to this adversary proceeding, the court summarized its thoughts as follows:

> [T]he trustee argues that [the debtor] received nothing even though TTS provided exactly what [the debtor] paid for. In effect, the trustee seeks to make TTS pay,

literally, for [the debtor's] decisions regarding where to install the purchased granite. The trustee's argument fails.

. . .

[T]he court must examine only the specific transactions at issue, not [the debtor's] overall financial condition or any fraudulent scheme that [the debtor's] management might have been perpetrating. It is undisputed that TTS provided real value to [the debtor] for the payments it received. [The debtor] ordered the stonework and directed where it was installed. TTS performed the work as directed by [the debtor] and was paid a reasonable amount for its work.

. . .

The trustee has failed to cite a single case in which an arms-length transaction between a debtor and a vendor in which a reasonable amount was paid for goods and services actually provided was avoided as constructively fraudulent based on what the debtor chose to do with those goods and services. *Fraudulent conveyance law is grounded in equity and is designed to enable a trustee or creditors to avoid a transfer when the transferee received more from the debtor than the debtor received from the transferee. . . . It is not designed to turn every vendor into an insurer to creditors against corporate malfeasance. Here, [the debtor] got what it paid for; it received reasonably equivalent value.*

*Id.* at 894–95 (citations omitted) (emphasis added). The Mack Industries court granted TTS's motion to dismiss the trustee's constructive fraud claims. *Id.* at 895. The court did not grant the trustee leave to amend his complaint because "the premise of [Trustee's] claim [was] faulty." *Id.*; *see also Peterson v. Ferguson Enterprises Inc. (In re Mack Indus.)*, Adv. No. 19 A 00436, 2020 WL 6589040 (Bankr. N.D. Ill. Nov. 10, 2020) (same analysis and dismissal of the trustee's "faulty" claims where the trustee sought to avoid payments made by the debtor to a retailer for plumbing supplies that were installed in properties not owned by the debtor, noting that what the debtor chose to do with the plumbing supplies did not affect the objective value that the retailer gave the debtor in exchange for money); *Peterson v. Capital One N.A.*, Adv. No. 19 A 00372, 2020 WL 67008874 (Bankr. N.D. Ill. Nov. 10, 2020) (same) (also finding that defendant provided value for purposes of 11 U.S.C. § 548(c).

Trustee's claims here are based on the same faulty premise as those in *Mack Industries*. This Court has already ruled that Debtor paid for the goods purchased at Menard. There is also no dispute that Debtor paid a reasonable, retail amount for those goods. Debtor paid for the goods by credit card, as shown in Menard's receipts, and Debtor directed how those goods were used. The analysis here regarding whether Menard gave value to Debtor does not change because Debtor allegedly used the supplies it owned to benefit Jones, JL, or JP. This Court need not concern itself with Debtor's overall financial condition or any fraudulent scheme that Debtor might have perpetrated, or even the separate and subsequent gratuitous transfers of the goods that are the subject of the Transactions.

Menard gave value to Debtor in exchange for the Transactions as a matter of law, and as matter of practicality. The value Menard gave Debtor was of equal value to the amounts Debtor paid. There is no dispute Menard gave value in good faith. Pursuant to 11 U.S.C. § 548(c), Menard has a complete affirmative defense to Trustee's claims.

## **Conclusion**

Trustees are provided with broad avoidance powers with the ultimate goal of recovering assets for creditors of a debtor's estate. This power does not including avoiding transfers in which the estate does not have an interest; and in the 7th Circuit, an estate does not have an interest in credit card "credit." Critically, Menard is a retailer. Menard is not a holder of credit for the Debtor (whereby arguably interest rates and other assurances comprise the risk assumed for non-payment), and Menard is not an insurance company for a consumer's other creditors. Trustee's use of estate resources to seek recovery for ordinary retail transactions is wrong and it thwarts the purpose of fraudulent conveyance law which is grounded in equity. Menard respectfully requests the intent and spirit of the Bankruptcy Code prevail now before any more unnecessary waste occurs.

For the foregoing reasons, Defendant Menard respectfully requests that this Court grant

summary judgment for Menard. First, because there is no estate interest in "credit card" credit, Trustee does not have authority to avoid the payments to Menard because Trustee can only avoid transfers of property of the estate. Second, to the extent the estate does have an interest, which it does not, then for the reasons previously stated, Menard is a subsequent transferee as a matter of law on the basis stated in Menard's original motion for summary judgment- between the Debtor (and its agents) and the credit card companies, Menard cannot be the initial transferee as a matter of law it must be subsequent. Finally, for the reasons stated herein, Trustee's transfers were received in good faith, and as a matter of law, value was transferred to Debtor. There is no factual dispute or unknown here, certainly none that change these legal conclusions. Menard therefore requests that summary judgment in its favor be granted, and for any such further relief this Court deems just and proper.

Dated: October 29th, 2024

Respectfully submitted,

**THOMPSON COBURN LLP**

By: _____
Sonette T. Magnus, #6323253
One US Bank Plaza
St. Louis, Missouri 63101
Telephone: (314) 552-6000
Fax: (314) 552-7000
smagnus@thompsoncoburn.com

and

Joseph S. Davidson,
W. Anthony Andrews
**OTTOSEN DiNOLFO HASENBALG & CASTALDO, LTD.**
1804 North Naper Blvd., Suite 350
Naperville, Illinois 60563
(630) 682-0085
jdavidson@ottosenlaw.com
wandrews@ottosenlaw.com

*Attorneys for Defendant Menard, Inc.*

# CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the above and foregoing instrument has been served electronically via the Court's ECF noticing system on those parties who receive notice from that system on the 29th day of October, 2024.

Andrew W. Covey – acovey1@hotmail.com

Jeana K. Reinbold – jeana@jeanareinboldlaw.com


                                          */s/ Sonette T. Magnus*

                                          Sonette T. Magnus