SIGNED THIS: November 14, 2024

**Peter W. Henderson**
**United States Chief Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | |
| I80 EQUIPMENT, LLC, | Case No. 17-81749 |
| Debtor. | |
| JEANA K. REINBOLD, Chapter 7 Trustee, | |
| Plaintiff, | |
| vs. | Adv. No. 19-8110 |
| MENARD, INC., | |
| Defendant. | |

## OPINION

The Chapter 7 Trustee is prosecuting this adversary proceeding under the fraudulent transfer statute of the Bankruptcy Code, 11 U.S.C. §548, to try to recover

funds that the Debtor (I80 Equipment, LLC) transferred to Menard, Inc., when the Debtor purchased goods at Menard's retail stores. Menard has moved for summary judgment based upon a theory that the Debtor's purchases at Menards did not involve an "interest of the debtor in property" because they were made by credit card. The Trustee has cross-moved for partial summary judgment on that issue. Because the retail purchases involved transfers of interests of the Debtor in property, the Trustee's motion will be granted and Menard's denied.[1]

I.      Jurisdiction

Menard first asserts that the Court lacks subject-matter jurisdiction over a well-pleaded complaint under 11 U.S.C. §548 brought by the Chapter 7 Trustee because the Trustee lacks standing. Menard's argument is unfounded. The Court has jurisdiction.

This Court has jurisdiction over "any and all proceedings arising under title 11 or arising in or related to a case under title 11" under 28 U.S.C. §157(a) and ILCD LR 4.1. A proceeding to recover fraudulent conveyances is a core proceeding under Title 11. 28 U.S.C. §157(b)(2)(H). The parties have consented to the entry of final judgment by the Court. The Court has constitutional and statutory authority to hear the case. *In re Horizon Group Management, LLC*, 617 B.R. 581, 585 (Bankr. N.D. Ill. 2020).

Menard argues that the Trustee lacks standing because the transfers alleged in the Trustee's complaint did not involve an interest of the Debtor in property. That is not a valid objection to standing. "Jurisdiction" means a tribunal's adjudicatory competence, not whether a litigant has an ironclad defense. *Builders Bank v. Fed. Deposit Ins. Corp.*, 846 F.3d 272, 274 (7th Cir. 2017). Standing to sue is established by allegations of injury, caused by the defendant, and redressable by a favorable judicial decision. *Craftwood II, Inc. v. Generac Power Systems, Inc.*, 920 F.3d 479, 481 (7th Cir. 2019). The Trustee, as representative of the estate, 11 U.S.C. §323, is explicitly given statutory authority to avoid a fraudulent transfer. 11 U.S.C. §548(a)(1). She has pleaded that a fraudulent transfer occurred that injured the estate. Doc. 28. That injury may be redressed by a favorable judicial decision. The Trustee obviously has standing. "Jurisdiction … is not defeated … by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." *Bell v. Hood*, 327 U.S. 678, 682 (1946); see also *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89

---

[1] The Court previously granted the parties' request for oral argument on the motions. Because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the Court, that argument is VACATED. A pretrial conference remains set for November 19, 2024, at 2:00 p.m.

(1998). Nor is it defeated by the possibility that the plaintiff will fail to prove her case. "[A] plaintiff's failure on the merits does not divest a federal court of jurisdiction." *Craftwood II*, 920 F.3d at 481.

One only needs to look to *Mann v. LSQ Funding Group, L.C.*, 71 F.4th 640 (7th Cir. 2023), to see that Menard's view is mistaken. There the lower courts had entered judgment in favor of the defendant because the trustee could not show under §547(b) and §548(a)(1) that the transfer involved an interest of the debtor in property. 71 F.4th at 644. The Seventh Circuit did not vacate the lower courts' judgment for lack of jurisdiction; instead, it affirmed the merits judgment. *Id.* at 648; see also *Reinbold v. Thorpe (In re Thorpe)*, 546 B.R. 172, 186 (Bankr. C.D. Ill. 2016) (granting summary judgment—not dismissing for lack of jurisdiction—when trustee failed to show an interest of the debtor in property), *aff'd*, 881 F.3d 536 (7th Cir. 2018). The Trustee here, like the trustees in *Mann* and *Thorpe*, has standing.

II. **The transfers alleged in the Complaint involved the Debtor's interest in borrowed funds, and Menard was the initial transferee of those funds.**

In any event, the basis of Menard's jurisdictional argument—that the transfers did not involve an interest of the Debtor in property—is incorrect. The summary judgment record establishes that each transfer did involve such an interest.

The undisputed material facts establish that the Debtor's credit cards, issued by First Midwest Bank and U.S. Bank, were used to buy over $700,000 worth of goods from Menard. Menard required payment at the time of purchase before it would release the goods. I80 later repaid the banks on most of the credit card debt related to those purchases. The Court has already held that the funds borrowed in each credit card transaction belonged to I80, not the individual cardholders. Doc. 107 at 3–5.

The Trustee alleges that I80 did not receive equivalent value for the transfers because I80 did not receive the merchandise it had paid for. (Instead, she alleges, the merchandise went to I80's principal, Erik Jones, and his other businesses.) That issue is not before the Court. This opinion addresses only whether I80's purchases involved transfers of an interest of I80 in property.

A. **The Debtor had an interest in the funds it borrowed when it used its credit card to obtain and pay Menard with those borrowed funds.**

Section 548(a)(1) of the Bankruptcy Code permits the trustee to avoid any transfer "of an interest of the debtor in property" that was actually or constructively

3

fraudulent. The quoted language refers to property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings. *Begier v. IRS*, 496 U.S. 53, 58 (1990). Obtaining money on credit to direct a payment to another is a transfer of an interest in property of the debtor. *Matter of Smith*, 966 F.2d 1527, 1532–33 (7th Cir. 1992). "Transfers by a debtor of borrowed funds constitute transfers of the debtor's property." *Id*. at 1533. The Seventh Circuit uses two approaches to determine whether a transfer affects an interest of the debtor in property, asking (1) whether the debtor can exercise control over the funds transferred and (2) whether the transfer diminishes the property of the estate. *Mann*, 71 F.4th at 645, citing *Smith*, 966 F.2d at 1535.

Using a credit card amounts to the ability to exercise control over funds that can be instantly borrowed and spent. As the Tenth Circuit explained:

> Technology masks the processes involved here. Separating them into constituent elements reveals a sequence of events, not just one: Debtors drew on their Capital One line of credit; that draw converted available credit into a loan; Debtors directed Capital One to use the loan proceeds to pay MBNA; and Capital One complied. It is essentially the same as if Debtors had drawn on their Capital One line of credit, deposited the proceeds into an account within their control, and then wrote a check to MBNA. … [D]ebtors obtained an interest in the loan proceeds even if the interest was only fleeting.

*In re Marshall*, 550 F.3d 1251, 1256–57 (10th Cir. 2008). To put a finer point on it, that court explained:

> The moment Capital One honored Debtors' draw on their line of credit those proceeds (the newly loaned funds) became an asset of Debtors' estate. A short time (perhaps only a nanosecond) later the assets were dissipated by the transfers to MBNA. The loan proceeds, like all preferential transfers, were not in the hands of Debtors when the bankruptcy petition was filed. But because of the preferential transfer statute, we must determine whether the proceeds were part of Debtors' estate at *any* time during the ninety-day look back. They were part of the bankruptcy estate immediately before being transferred to MBNA. The additional debt which accompanied the Capital One transactions is not relevant to our preference analysis, which concerns only assets.

4

*Id*. at 1258 n.6. Substitute "First Midwest Bank" or "U.S. Bank" for "Capital One," and "Menard" for "MBNA," and you have described the transactions alleged in the Trustee's complaint. Each transaction involved a transfer of an interest of the Debtor in property. The fact that the Debtor simultaneously incurred a debt is irrelevant; the point is that the Debtor transferred funds that would have been in the pool of assets available for creditors had those transfers not occurred. See *Mann*, 71 F.4th at 645. I80 transferred over $700,000 in funds it borrowed from First Midwest Bank and U.S. Bank to Menard. I80 converted its credit with the banks into loans, the proceeds of which were immediately transferred to Menard. It "successfully exercised dominion and control … at the moment that the Debtor's payment to [Menard] was achieved (that is, when the Bank honored [the credit request])." *Smith*, 966 F.2d at 1535.

Menard argues that credit card funds "never pass through an account belonging to a debtor" and therefore "a payment by credit card cannot be avoided as fraudulent" under §548. Doc. 128 at 10. In other words, Menard believes that I80 had no interest in the banks' paying Menard for the goods that its cardholders took out of the store. That view is incorrect. The banks here lent I80, through its cardholders, the funds necessary to consummate each transaction. I80, through its cardholders, then paid Menard with those funds. It is as if I80 asked for a loan every time it planned to shop at Menards, obtained the loan, and then spent the loan proceeds in full to obtain merchandise.[2] See *Smith*, 966 F.2d at 1532 ("The situation is the same as if the Debtor had gone to the Bank, taken out a five-day loan in cash and used the cash to pay [the payee]."). Credit cards are more efficient because the banks as a factual matter transfer the funds directly to the retailer. The purchaser still controls the direction of those funds, though[3]; the purchaser has an interest in the funds. See *Mann*, 71 F.4th at 645; *Smith*, 966 F.2d at 1535. Menard has not discovered the loophole that would render otherwise fraudulent transfers unrecoverable. A credit card purchase, like a cash or debit purchase, involves a transfer of an interest of the debtor in property.

---

[2] Menard concedes as much. "A credit card is a payment mechanism that allows the owner of the card to *borrow funds* to pay for goods or services on credit." Doc. 158 at 15 (emphasis added). Exactly so. A credit card transaction occurs when (1) the user borrows funds and (2) directs those funds to be used to purchase goods or services. *Marshall*, 550 F.3d at 1256–57.

[3] Menard believes that the banks actually directed the disposition of funds because they authorized each transaction. Doc. 158 at 17 n.9. But the banks would never have lent money to I80 to transfer to Menard had I80 not made the request in the first place. At all times, I80 decided how much to borrow and where to spend the borrowed funds—which, according to the Debtor's contract with First Midwest Bank, could be "anywhere the Visa® Commercial Card is accepted." Doc. 158-1 at 1. The banks did not decide to pay Menard for goods; I80 did.

Menard relies upon two cases to make its argument. *Mann*, which was mentioned above, does not support its position. The debtor there owed LSQ about $10.3 million secured by the debtor's invoices. 71 F.4th at 644. Millennium Funding paid LSQ $10.3 million and LSQ assigned its rights in the debtor's invoices to Millennium. *Id*. The debtor then filed for bankruptcy. *Id*. The trustee sought to avoid the transfer from Millennium to LSQ. *Id*. The Seventh Circuit affirmed the grant of summary judgment against the trustee, because Millennium's transfer to LSQ did not involve an interest of the debtor. *Id*. at 647–48. The debtor owed *somebody* $10.3 million; it did not matter whether that entity was Millennium or LSQ. Had the transfer been avoided, the $10.3 million would have been returned to Millennium, not the estate. The transaction did not involve the debtor. *Id*. at 647. Here, of course, the Debtor was involved in every transaction, in that it directed the transfer of its own funds (that it had borrowed from the banks) to Menard. *Mann* has no bearing on this case. *Smith*, not *Mann*, controls.

The other case Menard cites is *Manning v. Wallace (In re First Financial Associates, Inc.)*, 371 B.R. 877 (Bankr. N.D. Ind. 2007). The domestic partner of a corporate principal used the corporate credit card for about $1,000 worth of personal expenses. *Id*. at 914–15. But there was no evidence the corporation-debtor actually paid the credit card bill. *Id*. at 915. So no interest of the debtor was transferred, the court reasoned; only its credit was used. *Id*. To put it another way, "[t]he incursion of debt is not a transfer of property or of an interest of property." *Id*. That reasoning is flawed. True, in the rear-view mirror, it may appear that the corporation incurred a debt but received no property. But the reflection is distorted; as discussed above, the corporation borrowed $1,000 that it immediately applied to the partner's purchases.[4] "Transfers by a debtor of borrowed funds constitute transfers of the debtor's property." *Smith*, 966 F.2d at 1533. *First Financial Associates* is inconsistent with *Smith*, so it will be disregarded.

### B.     Menard was the initial transferee of I80's borrowed funds.

Menard then pivots to an alternative argument: if the Debtor did have an interest in its line of credit, then Menard was a subsequent transferee. First, it argues, the Debtor paid the banks, and then the banks paid Menard. Doc. 128 at 11–13. If its march through the test from *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th

---

[4] Think of it this way: Assume the partner used the corporation's credit to buy a $1,000 diamond ring. The jewelry store did not sell the ring on credit; it sold the ring because it received $1,000. Where did it get that $1,000? From the corporation, which through its line of credit borrowed $1,000 that it made available to the partner. It does not matter whether the corporation paid its own creditor back on the loan; what matters is that it transferred $1,000 in borrowed money to the jewelry store.

6

Cir. 1988), sounds familiar, that is because the Court earlier this year determined that Menard was not a subsequent transferee under *Bonded*. Doc. 107 at 3–4. The Court will not repeat its analysis, which at this point is the law of the case.

Menard appears to recognize that the Court has already decided this issue. So it falsely asserts that the Court's previous order "related to transfers of debit card funds, checks, or cash, not credit card funds." Doc. 128 at 13. The order speaks for itself:

> The transfer is simple—from Debtor to Menard—and any intermediaries who facilitate the transfer may be disregarded. …
>
> There is no genuine dispute of material fact that the Debtor transferred its funds to Menard in each of the transactions pleaded in the complaint.

Doc. 107 at 4, 5. The Court assumed that most transactions were by credit card. It rejected Menard's argument that "the authorized users of the *credit cards* were initial transferees." *Id*. at 4 (emphasis added). "[We do] not treat an authorized user of the corporation's *credit card accounts* as an initial transferee." *Id*. (emphasis added). "Common sense dictates that an authorized user of a corporate *credit card* does not have the right to misappropriate corporate funds…." *Id*. (emphasis added). Menard's belief that the Court did not account for the details of the transactions in its earlier order is mistaken.[5]

Summary judgment is the "put up or shut up" moment in litigation. *Brown v. CACH, LLC*, 94 F.4th 665, 667 (7th Cir. 2024). Menard should have raised its credit-card argument earlier this year when the Trustee sought, and obtained, summary judgment on the question of whether Menard was a subsequent transferee. It is too late for Menard to try to undermine that judgment with a novel legal theory.

On the merits, moreover, Menard's alternative argument fails because it is based on a faulty assumption from its primary argument. Menard asserts that "Debtor's property was first transferred from the Debtor to the [banks] … and then[] the credit

---

[5] As a matter of fact, the Court did wonder whether payment by credit card, as opposed to cash or other means, would affect the *Bonded* analysis. But it was satisfied under *Marshall* and *Smith* that the method of payment did not matter. A discussion of those cases did not appear in the order because Menard did not bring up the issue of credit card payments, see *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020), not because the issue was overlooked or excluded from the Court's analysis.

card 'funds' were transferred to Menard." Doc. 128 at 12. The Court understands Menard's argument to be:

1. A reduction in the amount of credit available is not an "interest in property," see *First Financial Associates*, 371 B.R. at 915;
2. But if it is, then the Debtor "paid" the banks by directing them to reduce its available credit, and the banks then paid Menard with those "funds," so Menard is a subsequent transferee.

The confusing nature of Menard's alternative argument only underscores that *First Financial Associates* was wrongly decided. The Debtor's interest in property was in the funds that I80 borrowed from the banks. It has nothing to do with reduction of credit or some other ethereal concept. The Debtor transferred borrowed funds to Menard. The Debtor had an interest in those borrowed funds. *Smith*, 966 F.2d at 1533. Menard was the initial transferee of those funds. Doc. 107 at 3–5. It is that simple.

The transfers of over $700,000 in borrowed money were transfers of interests of the Debtor in property. A separate order granting the Trustee's motion for partial summary judgment and denying Menard's motion for summary judgment will be entered.

# # #